May it please the Court. My name is Kelsey Larson. I, along with Christopher Lindsey, a student at UCLA School of Law, represent Petitioner Gloria Cruz Rauno as pro bono counsel. This morning we will be addressing two points. First, I will be addressing why the purported inconsistencies identified by the IJ and BIA are not supported by substantial evidence and therefore must be reversed. My colleague will be discussing the alternative argument that this case should be remanded on open record because Ms. Rauno was not given a reasonable opportunity to explain any of the purported inconsistencies. We would like to reserve one minute of our time for rebuttal. Ms. Rauno's fate here turns on the adverse credibility determinations of the IJ and BIA. An adverse credibility determination must be supported by substantial evidence, that is, supported by specific cogent reasons that take into consideration the totality of the circumstances. Ms. Larson, may I ask you a slightly different question? And that is, even if you were right on the adverse credibility determination, what evidence is there of persecution on account of a protected ground? Well, Your Honor, the issue of the merits of Ms. Rauno's asylum withholding and CAT claim are not before this Court. I'm sorry? The merits of Ms. Rauno's claims are not before this Court because the BIA never made a determination, never reviewed the IJ's ruling on that issue. The BIA only ruled on the adverse credibility determination of the IJ. So the issue is not before this Court. Okay. The inconsistency must be a true inconsistency, not a maybe inconsistency or one that is based on misinterpretations or mischaracterizations of the record. Here, Ms. Rauno credibly testified about the violent nature of her brother's death, the threats against her and her family, her opposition to the local government and gangs that controlled her area, eventually culminating in her fleeing to the United States. But instead of reviewing the evidence before him, the IJ and BIA based their adverse credibility determinations on mischaracterizations of the record, particularly by ignoring the precise questions asked of Ms. Rauno. This is where the IJ and BIA got it wrong. Because each of the actual inconsistencies relied on by the IJ and BIA fail, the adverse credibility determination should be reversed and Ms. Rauno should be deemed credible. The IJ based its adverse credibility determination on four purported inconsistencies. The BIA identified an additional inconsistency regarding how Ms. Rauno's brother was murdered. First, the IJ discussed Ms. Rauno's testimony about her entry into the United States. The circuit has already concluded that these so-called border interviewers are notoriously unreliable and cannot support an adverse credibility determination when they lack sufficient indicia of reliability. Here, Ms. Rauno's border interview lacked any indicia of reliability. We don't know whether a Spanish translator was used. We don't know how the Border Patrol agent's statement was prepared. We don't know whether it was transcribed verbatim or whether it was summarized. We know that she didn't speak English, but the statement was written in English. And on top of this, we know that immigrants may be reluctant to reveal full information in meeting with government officials for the first time. Counsel, one of the findings of the immigration judge on page nine is that he gives her what he calls a negative credibility finding based on the fact that she denied belonging to any organization which was complaining to the government about criminal gangs in Guatemala. I think that may go to Judge Reimer's question as to whether there was any kind of a protective ground here. So you do have a negative credibility finding, which actually looks just simply like a finding that there's no protective ground here. Your Honor, again, we don't believe that the merits issue is before this Court. Well, I'm not quite sure I understand that. I mean, you may be entirely right, but just thinking out loud here, you can't be removed from this country because you're not believable. You're removed because there's been a finding of no past persecution and no entitlement to withholding or asylum. And so here, you don't – you have a finding of no past persecution. You have a finding. And that wasn't appealed to the BIA. That's why the BIA didn't talk about it. And so I'm not sure I follow you. If there's no evidence of persecution on account of a protective ground, then there just isn't any, is there? Well, the IJ, he ruled on the adverse credibility determination, and he also reached the merits on the asylum withholding and CAT. She appealed pro se to the BIA. She had her one-page declaration. And the BIA seemed to dismiss the appeal, but basically, in my reading of it, dismissed it based on the adverse credibility determination solely. It never reached the issue of asylum. So our position is if this Court – if the adverse credibility determination is, in fact, reversed, then the issue should go back to the BIA. He should review and see whether she – she did present information. The IJ disagreed, but she did present information on protective grounds, on the grounds of family and political opinion. But again, our position here is that the issue is not before this Court because the BIA never addressed it. Okay. I don't know how much time you're allowing, Mr. Lindsey. I'm going to pass it off now. Okay. Good morning, Your Honor. My name is Christopher Lindsey. Ms. Ruano was never given an opportunity to account for the purported inconsistencies that the IJ relied on to find her not credible. At no point in the proceedings did either the IJ or the government's counsel ask Ms. Ruano a single clarifying question. This Court's precedent makes very clear that under these circumstances, the proper course is to remand on an open record to provide Ms. Ruano the opportunity to explain the first instance. For example, in Quan v. Gonzalez, this Court explicitly said that while the petitioner's testimony may have been unclear, unclear testimony may not serve as substantial evidence for an adverse credibility determination when an applicant is not given the chance to attempt to clarify her testimony. The government's only response to Ms. Ruano's contention that she was denied a reasonable opportunity to account for the purported inconsistencies was to say that she was represented by counsel at her hearing. This is quite correct. However, the mere fact that an applicant is represented by counsel is not sufficient without more to meet this requirement. This Court has held that in order to meet this requirement, either the IJ or the government's counsel needs to bring the inconsistencies to the petitioner's attention and give her a reasonable opportunity to explain. This Court has a long history of remanding these cases, even where the petitioner was represented by counsel at her initial hearing. For example, in the Chen case, which we cite in our brief, the petitioner was represented by counsel. The IJ actually did ask a couple of questions but did not specifically identify the inconsistencies to the petitioner. And this Court remanded to the agency to provide the petitioner the opportunity to explain the first instance. Because Ms. Ruano was never given the opportunity to explain the inconsistencies, this Court should remand to the agency to provide her that opportunity in the first instance. If the Court has no questions, we'll reserve our remaining time. Okay. Thank you, Mr. Lindsey. Thank you, Your Honors. Counsel, and may it please the Court, I'm Joseph Hardy from the Attorney General. I'm going to try to clarify some of the questions that were asked before with regards to the merits. The immigration judge found that she was adversely credible, and in the alternative, that she did not establish her claim on the merits. The Board's decision was limited to the adverse credibility determination, so you're only reviewing the adverse credibility determination, and that's assuming that it was exhausted, and I'm not conceding that point. You cannot remand this case on an open record, if anything, if you overturn the adverse credibility determination. You return it to the Board to decide whether her claims… What adverse findings do we have? What adverse credibility… Okay, three things that we have, and Counsel said four, I think there are really three. You have that the sworn statement is inconsistent with her credible fear interview letters, and a sworn statement that appears at page 463, she states that she has no fear when the asylum officer asks her, what are your reasons for, excuse me, the deportation officer asks her, what are your reasons for coming to the United States? She clearly states, for my children. Three weeks later, on January 19th, she states at a credible fear interview that she has this elaborate claim that she fears that she'll be persecuted because her brother was killed by the gangs and the police department in her locality. If you look in her testimony, the immigration judge asked, or excuse me, she was asked by her counsel specifically, what were the reasons for, excuse me, if you look in her credible fear interview, she says that the cause of her brother's death, which is the crux of her claim, is that he was strangled. On page 402 and 403, her counsel specifically asked her, well, didn't you tell me at a previous date that the police told you another reason for his death? She says, no, I know from the death certificate that he was strangled. It got to the point where counsel was trying to even lead her into giving the answer that she apparently, that she said in her credible fear interview. Which was that he was shot or that he was drowned? That he was, well, and that's going to be a third thing that's going to come up. That he was, at her credible fear interview, on page 463, she said, or excuse me, 459, she said that he was strangled, but the police told us that he was drowned. In the testimony on page 402 and 403. I just have an incredibly tough time saying how that's a major inconsistency. Well, Your Honor, as you know, this is a Real ID Act case. The Real ID Act no longer requires that, any inconsistencies. It's inconsistent. I'm sorry? Never mind how major it is. I just don't see, I mean, she wasn't told anything to begin with. It was her mother who was told. Well. Anyway, she says strangled once. And she says, but some other people said drowning, so. She's relating to, I read it as she was just simply relating the hearsay. What she was told, she wasn't an eyewitness to any of this. Well, the problem with that is, if you look under 1158B1B3, which governs credibility determinations and the burden of proof with respect to that, she has to give credible, she has to present credible evidence that's detailed, persuasive, and then she has to point to specifics in the record to support her claim. The only way that we can decide, an immigration judge can decide whether her claim is true. Doesn't the autopsy establish that he was strangled? The autopsy establishes that he was strangled. Okay, but so she's provided documentary evidence that he was strangled. What more does she have to do when she simply related that people told her at first that he drowned, because apparently he was found in a river, but he may have been strangled and then dropped in a river, and somebody else said, I heard he was shot. Those seem like rumors, and she's simply relating this as to what they were told at the time, but she's provided a documentary evidence. Well, I mean, you're looking at, there are two things. As this Court noted, I believe you entrust the, you relied on, or cited to the Supreme Court's decision, I believe, FCC v. Wu. There is, it's not just that the facts are inconsistent. It's the reason why you're, why are you telling a difference? Hey, I mean, if you're, you need to be able to relate, even if you're just saying what someone else said to you. It's still hearsay within hearsay. Your part of the hearsay still needs to be correct. So it's not, I mean, it may very well be that she was told. It could be she could have been told five different things. And at the beginning, if you look on page three. Nobody's suggesting that she wasn't told that her brother had been shot. Okay, no one, and quite frankly, I do believe the death certificate that her brother was strangled. There's no evidence other than the letter that she submitted to this Court that the brother was shot. And that was one of the other, and her declaration, which was really her administrative appeal brief to the Board. Right, but if she relates hearsay, the only way that she can be found incredible is if you can come back and prove that nobody told her that he was shot. The fact of whether he was drowned or whether he was strangled or whether something happened to him is utterly irrelevant to the question of credibility about whether she was told something. I disagree, Judge Bybee. She needs to, as I said, she needs to present credible evidence, point to specific facts in the record. She specifically said in a credible fair interview that he was strangled and that we were told that he drowned. When our counsel specifically asked her, well, didn't you say at a different time, or excuse me, in her testimony she said he was only strangled. But she was asked, didn't you say at a different time to another agent of the government that there was another reason why he died? She only said, she said no, he was only strangled. She didn't say there was another reason. I'm sorry? She did not say there was another reason. Your Honor, if you look at it. What she said was she was told that there was another reason. Very different. I disagree. Well, I'm sure you do. Her attorney knows her better than anyone else in this room. Respectfully, I would say he knows her better than the counsel that she has now. She specifically told him the story. I was told that the, that he was drowned. When she gets to the hearing, she says nothing about this. Well, we can even move on to some of the other. What's the third? You had three points, I think. What's the third one? The third point is, you've thrown me off a bit. I'm sorry, as you mentioned, the immigration judge said that she, there was questions as to whether her brother was a member of, was he a gangster? During the testimony, she said that her brother was a gangster. If you look at all her written documentation, she says that the brother was a general farmer. If you look at the, in her testimony. Is there anything to keep you from being both? I'm sorry? Is there anything to keep you from being both a farmer and a gangster? Well, that's just it, Judge Reimer. When the, the immigration judge knows nothing about your claim. When you get to your testimony, you need to be able to explain. But she said he was a gangster. I'm sorry? She said he was a gangster. She said, she said, well, why was your brother killed? She said he was a gangster. Right. But when you look at her credible fear interview, when you look at her declaration, which was actually excluded, but she's saying that her brother was a general farmer. So, I mean, there is a definite conflict. I just don't get what's inconsistent about that. I'm sorry? I just don't get what's inconsistent about that. Well, if you look at page, here, I will read specifically what she says on page. I'm sorry. Counsel, let's suppose that we disagreed with the BIA's credibility findings, conclusions, the adverse credibility conclusions. What's the remedy? The remedy would be to remand it to the board to decide in the first instance whether Counsel is saying that it was family. It's actually her two claims were that her particular social group was that her family was affluent. But if we remanded to the BIA, you're suggesting that we don't, that we not remand on an open record. We would simply have to deem her credible on the question of how her brother died and the fact that he was a gangster and a farmer. And it would go back to the board to decide whether. Whether that then is sufficient to support a claim for asylum. That's correct. As you know, and matter of AME, the board has already held that affluent Guatemalan families are not a particular social group. So we assume that the BIA would act consistently with its prior decisions on that, but that would be for the BIA to decide. That would be for the BIA to decide. I would also note there are inconsistencies with the, as you know, between the record of sworn statement and the credible fair interview in her testimony. The only way of challenging that is to say that this court has held in three Real ID Act cases such as Singh. I think there are two Singh cases that the court does not like to rely on the statements that are made as soon as the evidence comes across the border. As you know, the Real ID Act changes that. It permits the immigration judge to decide the claim. The inconsistencies were never made, regardless of whether they're under oath. Here you have, there's no evidence that the documents were not reliable. They were submitted by Petitioner. These are her documents. It's somewhat ingenuous to say that the court should not rely on documents that I submitted. Are there any other questions? I think not. Okay.  Thank you. Thank you, Mr. Hardy. Ms. Larson. I'd just like to clarify a few points. In terms of what she said in her sworn statement before with the Border Patrol agent, as I stated before, this court has held that these such border statements are notoriously unreliable, and here we don't have any indicia of reliability such that it could form the basis of an adverse credibility determination. In terms of the murder of her brother, there's no question, in fact, that he, in fact, was murdered. No one's challenging that. As with any chaotic event, there was confusion regarding what happened. Her testimony before the IJA was consistent that he had been strangled. It's supported by the death certificate. In terms of whether her brother was a gangster or not, this wasn't an actual inconsistency relied on by the IJA in reaching an adverse credibility determination, and so this court only reviews what was actually identified by the IJA, and, again, the IJA didn't say anything about the gangster and the brother. He talked about the border interview, the murder of the brother, whether she identified the Guatemalan government and the Maras as her persecutors, and, again, that was based on a question she wasn't asked. He based that determination on a question that was who they are. The question was who they are, and which called for an answer about individual identities. If we agreed with you on the question of the adverse credibility finding, do you agree with the government as to the remedy? I agree that if this court versus adverse credibility determination, she should be deemed credible, and it should go back to the BIA to make a determination on the merits of the asylum claim in the first instance. However, as my colleague mentioned, the alternative remedy we are seeking is a remand on an open record to allow her to explain any of the inconsistencies if this court were to find that they were, in fact, inconsistent. And, finally, the issue about whether Ms. Morano testified credibly about petitioning the government for protection, again, that was based on a question she wasn't asked. She was asked whether she had anything to do with the Maras. That's a different question than asking whether she petitioned against the Maras. When she was asked whether she petitioned against the Maras, she answered that she did go to the police, and so can't form the basis of an adverse credibility determination. Okay. Thank you, Ms. Larson. Thank you for your pro bono representations. Very helpful to the Court. We appreciate it. The matter just argued will be submitted, and we'll next hear argument in Larkin v. Gates.
judges: Alarcon, Rymer, Bybee